UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
                                                      :
MOON JOO YU, *et al.*,                                :
                                                      :
                               Plaintiffs,            :        14 Civ. 7588 (KPF)
                                                      :
                     v.                               :        OPINION AND ORDER
                                                      :
PREMIERE POWER LLC, *et al.*,                         :
                                                      :
                               Defendants.            :
                                                      :
------------------------------------------------------X

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: August 4, 2015 |

KATHERINE POLK FAILLA, District Judge:

Plaintiffs Moon Joo Yu, Amy J. Yu, and Hee Rak Kim (collectively,

"Plaintiffs") brought an action in September 2014 against various defendants

affiliated with Premiere Power LLC ("Premiere Power"); in it, Plaintiffs alleged

that they had been defrauded of some $1.65 million as part of a scheme to

repay a judgment that Defendants had incurred as a result of a separate,

earlier fraudulent scheme. Defendant Jerry Jankovic ("Defendant"), proceeding

*pro se*, moves to dismiss the Amended Complaint for failure to state a claim

under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange

Act"), Pub. L. 73-291, 48 Stat. 881; for failure to plead related state-law fraud

claims with particularity; and for lack of personal jurisdiction. For the reasons

stated below, the motion is denied.

## BACKGROUND[1]

### A.   Factual Background

The Court assumes familiarity with the facts and procedural history set forth in its prior Order granting Plaintiffs leave to amend the Complaint.  (Dkt. #49).  For convenience, the particular allegations relevant to this motion are set forth below.

Plaintiffs Moon Joo Yu ("Plaintiff Yu") and Hee Rak Kim ("Plaintiff Kim") invested, in total, $1.65 million in Premiere Power, a limited liability company organized and existing under the laws of the State of Delaware and domiciled in that state.  (Am. Compl. ¶¶ 5, 18).[2]  Plaintiffs Moon Joo Yu and Amy J. Yu are residents of New Jersey, and Plaintiff Hee Rak Kim is a resident of New

---

[1]   The facts contained in this Opinion are drawn from the Amended Complaint ("Am. Compl.") (Dkt. #52), and are taken as true for purposes of this motion.  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (when reviewing a complaint for failure to state a claim, the court will "assume all well-pleaded factual allegations to be true" (internal quotation marks omitted)).  "[B]ecause a motion to dismiss for lack of personal jurisdiction requires the resolution of factual issues outside the pleadings, the Court considers other relevant submissions from the parties at this stage."  *Elsevier, Inc.* v. *Grossman*, No. 12 Civ. 5121 (KPF), — F. Supp. 3d —, 2015 WL 72604, at *1 n.1 (S.D.N.Y. Jan. 5, 2015) (internal quotation marks and citations omitted); *accord Dorchester Fin. Sec., Inc.* v. *Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013) (per curiam) ("[W]e have made clear that a district court may [consider materials outside the pleadings] without converting a motion to dismiss for lack of personal jurisdiction into a motion for summary judgment.").  Specifically, the Court will consider the Affirmation of Jerry Jankovic in Support of Defendant's Motion to Dismiss ("Jankovic Aff.").  For convenience, Defendant's opening brief is referred to as "Def. Br." (Dkt. #41), and Plaintiff's opposition brief is referred to as "Pl. Opp." (Dkt. #53).

[2]   Amy J. Yu, the third Plaintiff in this action, is a necessary party because her name appears on the share certificate issued by Premiere Power.  (Am. Compl. ¶ 66 n.6).  However, because she was never approached or solicited by Defendant or any other Defendant in the instant litigation, she does not feature prominently in the Amended Complaint.

York.  (*Id.* at ¶¶ 10-12).  Defendant is a resident of the State of Oklahoma. (Jankovic Aff. ¶ 2).

### 1.    Defendant's Formation of Premiere Power

In 2001, Defendant and Sandra Dyche, a co-defendant in the instant litigation, established a purported energy plant and casino complex operating under the name 21st Century Morongo Energy LLC (the "Morongo Project"). (Am. Compl. ¶ 24).  According to the Amended Complaint, the Morongo Project was created in part for the purpose of paying off an outstanding legal claim owed to an individual named Thomas Thompson.  (*Id.*).  Towards this end, in 2001, Defendant and Dyche fraudulently induced Byung Chul An and Hyang Ok An (collectively, the "Ans") to invest $1.2 million in the Morongo Project, with a promise that they would receive their principal investment back within one year.  (*Id.* at ¶¶ 25, 27).

In 2002, the Ans sought return of their investment.  (Am. Compl. ¶ 28). Having used the Ans' investment to settle Mr. Thompson's claim, Dyche falsely represented to the Ans that the Morongo Project was "proceeding according to plan" and that they simply had to "wait" for the return of their principal.  (*Id.*). Over the next few years, neither Defendant nor Dyche contacted the Ans to update them on the status of the Morongo Project, nor did they return any principal or make any distributions to the Ans.  (*Id.* at ¶ 29).

In 2006, the Ans sued Defendant and Dyche, among others, alleging that the defendants had defrauded them of their $1.2 million investment.  (Am.

Compl. ¶ 30).  It is alleged that in order to generate money to pay off any potential judgment obtained by the Ans, Defendant, Dyche, and Defendant's son and co-defendant, John Jankovic, created Premiere Power.  (Am. Compl. ¶ 32).  Defendant subsequently dubbed himself Chairman of the Board and voting majority member of the company, with Dyche as a member of the Board of Directors and John Jankovic as Managing Member and CEO.  (*Id.* at ¶ 33).

In 2009, Defendant, along with Dyche and John Jankovic, enlisted co-defendants Ana Lee and Annie Kim to help solicit potential investors in Premiere Power.  (Am. Compl. ¶ 34).  In return for obtaining investors, Defendant, Dyche, and John Jankovic told Lee and Kim that they would receive a "higher percentage of ownership in Premiere Power."  (*Id.* at ¶ 35).  Defendant, Premiere Power, and John Jankovic also provided a broker's fee to Lee and Kim for each investor they obtained.  (*Id.* at ¶ 62).

### 2.  Plaintiff Yu Invests in Premiere Power

In 2008, Plaintiff Yu met Defendants Lee and Kim through a mutual acquaintance.  (Am. Compl. ¶ 38).  In December 2009, after receiving an invitation from Lee and Kim to "get together socially" while all were travelling in Korea, Yu was introduced to Dyche.  (*Id.* at ¶¶ 39-40).  At this meeting, Dyche, Lee, and Kim told Yu that if she invested $1.5 million in Premiere Power, she would be able to receive at least $300,000 annually beginning in the fourth year of her investment, with the amount received increasing each year thereafter.  (*Id.* at ¶ 42).  Dyche also presented Yu with a copy of the "Premiere

Power Preliminary Information Memorandum," dated September 9, 2009 (the "PIM"), developed by Defendant and John Jankovic. (*Id.* at ¶ 43 & Ex. A). The PIM described an opportunity to invest in a "green-energy project" to develop, construct, and operate two power plants, one on Comanche Nation Native American tribal land near Lawton, Oklahoma (the "Comanche Project"), and another on Osage Nation Native American tribal land near Osage, Oklahoma (the "Osage Project"). (*Id.*).

Plaintiffs allege that the PIM was developed by Defendant and John Jankovic "with the specific intent to defraud potential investors ... by having them rely upon fraudulent and false information regarding the Comanche and Osage Projects, including but not limited to, the development stage, the companies and individuals involved, and the financial projections." (Am. Compl. ¶ 44). Additionally, the PIM incorporated "numerous false documents" regarding agreements for funding of the Comanche and Osage Projects, as well as an agreement with the Osage Tribe to develop a "gas-powered cogeneration plant." (*Id.* at ¶ 43). Despite the representations made in the PIM, the Comanche and Osage Native American Tribal Nations had never agreed to the development of power plants on their land. (*Id.* at ¶ 57). The PIM also contained the names of various individuals purporting to be members, board members, and/or advisors to Premiere Power — all of whom denied such involvement with the company. (*Id.* at ¶ 54).

On December 9, 2009, based in part on the representations made in the PIM, Plaintiff Yu transferred an amount in South Korean currency equivalent to $500,000 to Dyche for investment in Premiere Power.  (Am. Compl. ¶ 49).  On December 14 and 15, 2009, Yu wired an additional $80,000 and $420,000, respectively, to Premiere Power's bank account.  (*Id.* at ¶ 50).

Also in December 2009, Yu attended a presentation concerning Premiere Power at the offices of Chadbourne & Parke LLP in Manhattan (the "Chadbourne & Parke Meeting").  (Am. Compl. ¶ 51).  John Jankovic, allegedly at the direction of Defendant, attended the presentation along with Defendants Dyche, Lee, and Kim.  (*Id.* at ¶¶ 51-52).  At the meeting, John Jankovic provided the false and fraudulent information contained in the PIM he had developed with Defendant, along with other fraudulent information pertaining to Premiere Power.  (*Id.* at ¶¶ 52-53).  Based on the fraudulent representations made at this presentation, as well as those made at the meeting in Korea, Yu invested an additional $500,000, bringing her total investment in Premiere Power to $1.5 million.  (*Id.* at ¶ 56).[3]

### 3.    Plaintiff Kim Invests in Premiere Power

Plaintiff Kim learned of Premiere Power through his aunt, who had attended the Chadbourne & Park Meeting.  (Am. Compl. ¶ 58).  Subsequently,

---

[3]     After Plaintiff Yu invested her money in Premiere Power, she received a share certificate bearing her name and her daughter's name, showing a 0.6% interest.  (Am. Compl. ¶ 66).  However, according to the figures set forth in the PIM, they should have received a 0.75% interest in Premiere Power in exchange for their $1.5 million investment.  (*Id.*).

in early 2010, Defendant Lee began visiting Kim to convince him to invest in Premiere Power, allegedly telling him "that within two years, the Premiere power plant would be completed and he would receive a very large return on his investment." (*Id.* at ¶ 59). As a result of these fraudulent misrepresentations, Plaintiff Kim invested $150,000 in Premiere Power. (*Id.* at ¶ 60).

### 4.    Plaintiffs Discover the Fraud and Are Further Defrauded

Since investing in Premiere Power, no Plaintiff has received any update, either written or oral, about their investments or any other company developments. (Am. Compl. ¶ 67). Yu never had her $1.5 million principal returned to her — and indeed has received no distributions from Premiere Power — despite assurances that she would receive her principal back within the first two years. (*Id.* at ¶¶ 67-68). Yu also never received a Schedule K-1 from Defendants. (*Id.* at ¶ 68).[4]

In the summer of 2012, concerned about her investment, Plaintiff Yu approached Defendants Lee and Kim, who also professed to have concerns about Defendant, Dyche, John Jankovic, and Premiere Power. (Am. Compl. ¶ 69). Subsequently, in the fall of 2012, Yu gave Lee $50,000 to hire an attorney to determine if the investment in Premiere Power was legitimate. (*Id.* at ¶ 70). In 2013, Lee stated to Yu that, in order for Lee to be part of a lawsuit

---

[4]    A Schedule K-1 (Form 1120S) is used by corporations to report a shareholder's share of a corporation's income to the IRS. *See* IRS, Shareholder's Instructions for Schedule K-1 (Form 1120S), http://www.irs.gov/pub/irs-pdf/i1120ssk.pdf (last visited Aug. 4, 2015).

against Defendant, Dyche, John Jankovic, and Premiere Power, Yu needed to sign an agreement showing that Lee had funded $750,000 of Yu's $1.5 million investment. (*Id.* at ¶ 71). That same year, Yu learned that the attorney they had ostensibly selected had only received $10,000 of the $50,000 that Yu had given to Lee for her services, with Lee keeping the remainder of her money for herself. (*Id.* at ¶ 72). Around this time, Yu became aware of the judgment that the Ans had obtained in their lawsuit against Defendant and Dyche comprising approximately $1.2 million in compensatory damages and $1.2 million in punitive damages. (*Id.* at ¶ 75). Given these developments, Yu realized that the Premiere Power investment was a fraud and that information provided to her by Defendant, Dyche, John Jankovic, Lee, and Kim was untrue. (*Id.* at ¶ 73).

Plaintiffs allege that at the direction of Defendant, John Jankovic, and Dyche, "at least one million dollars" of the money Plaintiffs invested in Premiere Power was used to settle the judgment obtained by the Ans against Defendant and Dyche. (Am. Compl. ¶ 76). To date, Plaintiffs have not received a return of any portion of their investment in Premiere Power. (*Id.* at ¶ 77).

## B.   Procedural Background

Plaintiffs filed the instant action on September 18, 2014. (Dkt. #1). On February 3, 2015, Defendant, proceeding *pro se*, filed a motion to dismiss. (Dkt. #39). On February 26, 2015, Plaintiffs filed a letter motion seeking leave to amend the Complaint. (Dkt. #47). On March 4, 2015, the Court granted

8

Plaintiffs' application to file an Amended Complaint, specifying that
Defendant's motion to dismiss would be construed to move on the Amended
Complaint and that any new arguments made by Defendant in his reply brief
would be construed to have been made in his original motion.  (Dkt. #49 at 2).
On March 6, 2015, Plaintiffs filed the Amended Complaint.  (Dkt. #52).
Plaintiffs filed their opposition to Defendant's Motion to Dismiss on March 9,
2015.  (Dkt. # 53).  To date, Defendant has not filed a reply brief.

## DISCUSSION

In his motion, Defendant challenges both the Court's personal
jurisdiction over him and the adequacy of Plaintiffs' allegations in the Amended
Complaint.  Because Defendant is proceeding *pro se*, the Court construes his
arguments liberally.  *See Bertin* v. *United States*, 478 F.3d 489, 491 (2d Cir.
2007) ("We liberally construe pleadings and briefs submitted by pro se litigants,
reading such submissions to raise the strongest arguments they suggest."
(citations and quotation marks omitted)).  Even with that liberal construction,
Defendant's challenges fail.

## A.   Defendant's Motion to Dismiss for Lack of Personal Jurisdiction Is Denied

### 1.   Applicable Law

On a motion to dismiss pursuant to Federal Rule of Civil Procedure
12(b)(2), "the plaintiff bears the burden of establishing that the court has
jurisdiction over the defendant."  *DiStefano* v. *Carozzi N. Am., Inc.*, 286 F.3d 81,
84 (2d Cir. 2001) (citation omitted); *accord In re Terrorist Attacks on Sept. 11,*

*2001*, 714 F.3d 659, 673 (2d Cir. 2013).  "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction.  At that preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations." *Dorchester*, 722 F.3d at 84-85 (citation omitted); *accord In re Terrorist Attacks*, 714 F.3d at 673 ("In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." (citation omitted)).  All jurisdictional allegations "are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor[.]" *A.I. Trade Fin., Inc.* v. *Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993).  However, the court "will not draw argumentative inferences in the plaintiff's favor," and need not "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks*, 714 F.3d at 673 (citations omitted); *accord Licci ex rel. Licci* v. *Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012).

District courts deciding a motion to dismiss for lack of personal jurisdiction must engage in a two-part analysis.  First, the court must establish whether there is "a statutory basis for exercising personal jurisdiction," *Marvel Characters, Inc.* v. *Kirby*, 726 F.3d 119, 128 (2d Cir. 2013); second, the court must decide whether the exercise of jurisdiction comports with due process, *see Sonera Holding B.V.* v. *Çukurova Holding A.Ş.*, 750 F.3d 221, 224 (2d Cir.) (per curiam), *cert. denied*, 134 S. Ct. 2888 (2014).  In part one of the analysis,

the court "applies the forum state's personal jurisdiction rules" unless a federal statute "specifically provide[s] for national service of process." *PDK Labs, Inc.* v. *Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997) (internal quotation marks omitted).

### 2.   Discussion

#### a.   This Court Has Jurisdiction over Plaintiffs' Securities Fraud Claims

Defendant argues in the first instance that this Court lacks jurisdiction over him for Plaintiffs' claim under Section 10(b) of the Exchange Act and Rule 10b-5. (Def. Br. 1-3). The Exchange Act permits the exercise of personal jurisdiction "to the limit of the Due Process Clause of the Fifth Amendment." *S.E.C.* v. *Unifund SAL,* 910 F.2d 1028, 1033 (2d Cir. 1990). "[U]nder the Fifth Amendment the court can consider the defendant's contacts throughout the United States." *Chew* v. *Dietrich*, 143 F.3d 24, 28 n.4 (2d Cir. 1998).

"The due process test for personal jurisdiction has two related components: the 'minimum contacts inquiry' and the 'reasonableness' inquiry." *Metro. Life Ins. Co.* v. *Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996). Applying these tests to a statute that permits jurisdiction to be exercised over an individual based on his contacts throughout the United States, a court must first determine whether the defendant has "sufficient contacts" with the United States to justify the court's exercise of personal jurisdiction. *Id.* If such contacts are found, the court may assert personal jurisdiction so long as "it is

reasonable [to do so] under the circumstances of the particular case." *Id.* at
568.

A defendant satisfies the minimum contacts requirement when his
conduct in and connection with the United States are such that "he should
reasonably anticipate being haled into court there." *Unifund SAL,* 910 F.2d at
1033 (citation omitted).  For a defendant to reasonably anticipate a court
having jurisdiction over him, it is essential in each case that there be some act
by which the defendant "purposefully avails [him]self of the privilege of
conducting activities" within the United States, thus "invoking the benefits and
protections of its laws." *Burger King Corp.* v. *Rudzewicz,* 471 U.S. 462, 475
(1985) (quoting *Hanson* v. *Denckla,* 357 U.S. 235, 253 (1958)).

Here, while some of the alleged fraudulent conduct took place while
Plaintiffs were traveling abroad, Defendant was at all relevant times a resident
of Oklahoma.  (Am. Compl. ¶ 14; Jankovic Aff. ¶ 2).  This alone satisfies the
minimum contacts requirement.  *See Mariash* v. *Morrill*, 496 F.2d 1138, 1143
(2d Cir. 1974) ("[W]here, as here, the defendants reside within the territorial
boundaries of the United States, the 'minimal contacts,' required to justify the
federal government's exercise of power over them are present."); *see also Truk
Int'l Fund, LP* v. *Wehlmann*, No. 08 Civ. 8462 (PGG), 2009 WL 1456650, at *2
(S.D.N.Y. May 20, 2009) ("The Individual Defendants are residents of the
United States....  Accordingly, there is no issue as to jurisdiction.").  Although
Defendant argues that this Court's exercise of jurisdiction is unreasonable, he

12

does so based on the mistaken view that the Court should consider whether Defendant purposefully availed himself of the privilege of conducting activities in *New York*, rather than in the United States.  (*See* Def. Br. 4-5).  Defendant resides within the United States, he conducts business within the United States, and he should reasonably anticipate being haled into court in the United States.  Accordingly, this Court's exercise of personal jurisdiction over Defendant with respect to Plaintiffs' securities fraud claim is proper.[5]

### b.   This Court Has Pendent Jurisdiction over Plaintiffs' State-Law Claims

Defendant makes similar jurisdictional arguments as to Plaintiffs' state-law claims for fraud, fraudulent inducement, civil conspiracy, breach of fiduciary duty, and unjust enrichment.[6]  Having established jurisdiction over

---

[5]     Although Defendant did not file a motion to dismiss under Rule 12(b)(3) for improper venue, the Court will address this issue *sua sponte* in the interest of completeness, and to ensure it that construes Defendant's jurisdictional arguments liberally.  Section 27 of the Exchange Act, 15 U.S.C. § 78aa, is the venue provision specific to the Exchange Act. It provides for venue in any district where "any act or transaction constituting the violation occurred."  *Id.*  Where, as here, such an act is based on a Defendant's fraudulent representations, "misrepresentations and omissions are deemed to 'occur' in the district where they are transmitted or withheld."  *In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d 392, 397 (S.D.N.Y. 2006) (internal quotation marks omitted). Here, the Amended Complaint alleges that the false and fraudulent information contained in the PIM was provided to Plaintiff Yu and other investors at the Chadbourne & Parke Meeting in Manhattan, which lies within this District.  (Am. Compl. ¶ 52).  Accordingly, the Court finds that venue properly lies in the Southern District of New York.

[6]     Although Plaintiffs labeled their eighth claim for relief as an additional "Breach of Fiduciary Duty" claim, this appears to have been an error.  The paragraphs in this section of the Amended Complaint track the pleading requirements for an unjust enrichment claim.  "Under New York law, a plaintiff asserting a claim of unjust enrichment must show that [i] the defendant was enriched [ii] at the plaintiff's expense and that [iii] equity and good conscience require the plaintiff to recover the enrichment from the defendant."  *Bigio* v. *Coca-Cola Co.*, 675 F.3d 163, 176 (2d Cir. 2012) (quoting *Giordano* v. *Thomson*, 564 F.3d 163, 170 (2d Cir. 2009)).  In their eighth claim for relief, Plaintiffs allege that due to Defendant's fraudulent action he was "[i] enriched, [ii] at the expense of Plaintiffs" and that "[iii] it would be against equity and good conscience to

Plaintiffs' federal claim under the Exchange Act, the Court must determine if it has pendent personal jurisdiction over Plaintiffs related state-law claims. "[U]nder the doctrine of pendent personal jurisdiction, where a federal statute authorizes nationwide service of process, and the federal and state claims 'derive from a common nucleus of operative fact,' the district court may assert personal jurisdiction over the parties to the related state law claims even if personal jurisdiction is not otherwise available." *In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d 458, 481 (S.D.N.Y. 2012) (citation omitted) (quoting *IUE AFL-CIO Pension Fund* v. *Herrmann,* 9 F.3d 1049, 1056 (2d Cir. 1993).

In the instant action, the state-law claims against Defendant unquestionably derive from a common nucleus of operative fact, given that both the federal and state claims are based upon Defendant's fraudulent actions directed at Plaintiffs for the purpose of soliciting investments in Premiere Power. Accordingly, the Court exercises pendent jurisdiction over the state-law claims and need not reach the question of whether personal jurisdiction over Defendant as to the state-law claims is otherwise available. *See S.E.C.* v. *ICP Asset Mgmt.*, LLC, No. 10 Civ. 4791 (LAK), 2012 WL 204098, at *4 (S.D.N.Y. Jan. 24, 2012) ("As the [plaintiff] states a claim against [defendant] under the [federal statute authorizing nationwide service of process], there is no need to

---

permit Defendant[] to retain the ill-gotten benefits that [he] received from Plaintiffs." (Am. Compl. ¶¶ 124-25).

consider whether this Court would have personal jurisdiction over the state law claims[.]").

## B.  Defendant's Motion to Dismiss for Failure to State a Claim Is Denied

### 1.  Applicable Law

#### a.  Motions to Dismiss Under Rule 12(b)(6)

Defendant also challenges the adequacy of Plaintiffs' pleadings against him.  When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).  Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).  "While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [a plaintiff's] claims across the line from conceivable to plausible.'"  *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Moreover, "the tenet that a court must accept a complaint's

15

allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* at 663.

### b.   Pleading Requirements for Securities Fraud Claims

Section 10(b) of the Exchange Act makes it unlawful to "use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe."  15 U.S.C. § 78j(b).  The implementing rule, Rule 10b-5, provides in turn that it is unlawful "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading."  17 C.F.R. § 240.10b-5.  To state a claim for securities fraud under Section 10(b) and Rule 10b-5, a plaintiff must therefore adequately plead these six elements: "[i] a material misrepresentation or omission by the defendant; [ii] scienter; [iii] a connection between the misrepresentation or omission and the purchase or sale of a security; [iv] reliance upon the misrepresentation or omission; [v] economic loss; and [vi] loss causation." *Stoneridge Inv. Partners, LLC* v. *Scientific-Atlanta,* 552 U.S. 148, 157 (2008).

"Securities fraud claims are subject to heightened pleading requirements that the plaintiff must meet to survive a motion to dismiss." *ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007); *see also Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007).  In particular, a

16

complaint alleging securities fraud must meet the requirements of Federal Rule

of Civil Procedure 9(b).  *See ECA & Local 134 IBEW Joint Pension Tr. of Chi.* v.

*JP Morgan Chase Co.,* 553 F.3d 187, 196 (2d Cir. 2009).  Rule 9(b) requires that

"[i]n alleging fraud or mistake, a party must state with particularity the

circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Specifically,

Rule 9(b) requires that a complaint "[i] specify the statements that the plaintiff

contends were fraudulent, [ii] identify the speaker, [iii] state where and when

the statements were made, and [iv] explain why the statements were

fraudulent."  *ATSI,* 493 F.3d at 99 (citation omitted).  "Allegations that are

conclusory or unsupported by factual assertions are insufficient."  *Id.*

    A complaint alleging securities fraud must also comply with the pleading

requirements of the Private Securities Litigation Reform Act (the "PSLRA"), 15

U.S.C. § 78u-4(b).  *See Lewy* v. *SkyPeople Fruit Juice, Inc.,* No. 11 Civ. 2700

(PKC), 2012 WL 3957916, at *7 (S.D.N.Y. Sept. 10, 2012) ("Courts must

dismiss pleadings that fail to adhere to the requirements of the PSLRA.").  In

particular, where a plaintiff's claims depend upon allegations that the

defendant has made an untrue statement of material fact or that the defendant

omitted a material fact necessary in order to make the statements not

misleading, the plaintiff "shall specify each statement alleged to have been

misleading, the reason or reasons why the statement is misleading, and, if an

allegation regarding the statement or omission is made on information and

belief, the complaint shall state with particularity all facts on which that belief

17

is formed." 15 U.S.C. § 78u-4(b)(1).  Thus, in order to plead a claim of

securities fraud, plaintiffs "must do more than say that the statements ... were

false and misleading; they must demonstrate with specificity why and how that

is so." *Rombach* v. *Chang,* 355 F.3d 164, 174 (2d Cir. 2004); *see also In re*

*Austl. & N.Z. Banking Grp. Ltd. Sec. Litig.,* No. 08 Civ. 11278 (DLC), 2009 WL

4823923, at *7 (S.D.N.Y. Dec. 14, 2009).

In addition, a plaintiff pleading scienter in a securities fraud action

"shall, with respect to each act or omission alleged to violate this chapter, state

with particularity facts giving rise to a strong inference that the defendant

acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).  "For an

inference of scienter to be strong, 'a reasonable person [must] deem [it] cogent

and *at least as compelling* as any opposing inference one could draw from the

facts alleged.'" *ATSI,* 493 F.3d at 99 (quoting *Tellabs,* 551 U.S. at 324)

(alteration and emphasis in *ATSI*).

### c.    Pleading Requirements for State-law Fraud Claims

Federal Rule of Civil Procedure 9(b) imposes a heightened pleading

standard on state-law claims alleging fraud.  *See Loreley Fin. No. 3 Ltd.* v. *Wells*

*Fargo Sec., LLC,* — F.3d —, No. 13-1476-cv, 2015 WL 4492258, at *26 n.14 (2d

Cir. July 24, 2015) ("While the substantive elements of common-law fraud that

must be *proven* are a matter of state law, what must be *pleaded* and with what

level of particularity are governed by Rules 9(b) and 12(b)(6)." (emphases in

original, citation omitted)).  Such claims must "state with particularity the

circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), a complaint must "allege facts that give rise to a strong inference of fraudulent intent." *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 693 (2d Cir. 2009) (quoting *Acito* v. *IMCERA Group, Inc.,* 47 F.3d 47, 52 (2d Cir. 1995)). The particularity requirement of Rule 9(b) "serves to 'provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit.'" *Rombach* 355 F.3d at 171 (quoting *O'Brien* v. *Nat'l Property Analysts Partners,* 936 F.2d 674, 676 (2d Cir. 1991)).

   **2.    Discussion**

      **a.    Plaintiffs State a Claim Under Section 10(b) of the Exchange Act and Rule 10b-5**

         **i.    Plaintiffs Adequately Allege Defendant's Misrepresentations**

Defendant challenge the misrepresentation and scienter elements of Plaintiff's securities fraud claim. First, he argues that Plaintiffs "failed to assert what representations were made by Defendant Jerry Jankovic" to them regarding Premiere Power as a "genuine investment opportunity." (Def. Br. 8). This is not so. The Amended Complaint alleges that Defendant "authored" and "developed" the PIM, which Plaintiffs claim contained "numerous false documents" and "fraudulent and false information" regarding the Comanche and Osage Projects that were intended to mislead potential investors, including Plaintiffs. (Am. Compl. ¶¶ 43-44). Moreover, they provide detailed factual allegations as to why the information was false, including an allegation that

most of the individuals listed as members, board members, equity owners, and
advisors disclaimed involvement with Premiere Power and were not aware of
their purported positions in the company.  (*Id.* at ¶¶ 55-56).  Further, the
Amended Complaint points out that the PIM claimed to use "ESA Engineering"
as a service provider, despite the latter company having been dissolved
approximately two years prior to the date appearing on the PIM.  (*Id.* at ¶ 43
n.2).  Accordingly, the Court finds that Plaintiffs have adequately pleaded their
claim under Section 10(b)(5) with respect to the requisite misrepresentations by
Defendant.

### ii.    Plaintiffs Adequately Allege Scienter

Defendant also argues that the Plaintiffs "failed to establish that he acted
with the required scienter" for a claim under Section 10(b) because they have
not demonstrated that Defendant possessed a "mental state embracing intent
to deceive, manipulate or defraud."  (Def. Br. 9 (quoting *South Cherry Street,
LLC* v. *Hennessee Group, LLC*, 573 F.3d 98, 108 (2d Cir. 2009))).

Again the Court disagrees.  To demonstrate an intent to deceive,
manipulate, or defraud, Plaintiffs can show either "[i] that defendants had the
motive and opportunity to commit fraud, or [ii] strong circumstantial evidence
of conscious misbehavior or recklessness."  *ECA*, 553 F.3d at 198.  To show
motive and opportunity, Plaintiffs must allege that Defendant "benefitted in
some concrete and personal way from the purported fraud."  *Id.* (quoting *Novak*
v. *Kasaks*, 216 F.3d 300, 307-08 (2d Cir. 2000)).  "Motives that are common to

most corporate officers, such as the desire for the corporation to appear profitable and the desire to keep stock prices high to increase officer compensation, do not constitute 'motive' for purposes of this inquiry." *Id.*

Plaintiffs have met this burden through several allegations in the Amended Complaint.  First, as Chairman of Premiere Power, Defendant directly benefited from the misstatements made in the PIM, as Plaintiffs relied on the representations set forth therein in making their decision to invest.  (Am. Compl. ¶ 47).  Moreover, the allegations in the Amended Complaint demonstrate a personal and concrete motive for doing so:  Defendant's need to generate money to pay off a $2.4 million settlement obtained by the Ans against him and others for their roles in the fraudulent Morongo Project scheme.  (*Id.* at ¶¶ 32, 75).  Accordingly, this Court finds that Plaintiffs have adequately pleaded scienter, and have therefore stated a claim under Section 10(b) of the Exchange Act.

### 3.  Plaintiffs Have Pleaded the Fraud Claims with Sufficient Particularity

Defendant further contends that Plaintiffs fail to satisfy the pleading requirements of Rule 9(b) "with regard to the four (4) causes of action alleged against Defendant."  (Def. Br. 6).  By the Court's count, the Amended Complaint alleges six causes of action against Defendant.  The heightened pleading requirements of Rule 9(b) apply to Plaintiffs' federal claim under Section 10(b) as well as to their state-law claims for fraud, fraudulent inducement, breach of fiduciary duty, and unjust enrichment.  *See Krys* v.

*Pigott*, 749 F.3d 117, 129 (2d Cir. 2014) ("In asserting claims of fraud —
including claims for aiding and abetting fraud or a breach of fiduciary duty
that involves fraud — a complaint is required to plead the circumstances that
allegedly constitute fraud 'with particularity.'"); *Benefield* v. *Pfizer Inc.*, — F.
Supp. 3d —, No. 14 Civ. 3394 (JPO), 2015 WL 1958929, at *10 (S.D.N.Y.
May 1, 2015) ("[Where] the basis for the alleged unjust enrichment claim is …
fraudulent conduct[,] Plaintiffs cannot avoid the heightened pleading
requirement of Federal Rule 9(b) by casting their fraud claim as one for unjust
enrichment."); *Dexia SA/NV* v. *Bear, Stearns & Co.*, 929 F. Supp. 2d 231
(S.D.N.Y. 2013) (holding that a plaintiff asserting claim for fraudulent
inducement under New York law in federal courts must satisfy the heightened
pleading requirements for fraud claims under the Federal Rules of Civil
Procedure).  As this Court has already determined that Plaintiffs have
adequately pleaded the securities fraud claim, the Court will address the
argument that the claims for fraud, fraudulent inducement, breach of
fiduciary duty, and unjust enrichment have not been pleaded with
particularity.[7]

---

[7]     Plaintiffs' civil conspiracy claim, the remaining claim against Defendant, is subject to
the more liberal pleading standard of Rule 8(a).  See *Amusement Indus., Inc.* v. *Stern*,
693 F. Supp. 2d 327, 355 n.15 (S.D.N.Y. 2010) (rejecting the "argument that the
elements of the civil conspiracy must comply with the particularity requirements of Fed.
R. Civ. P. 9(b)").  Although Defendant did not move to dismiss this claim, as separate
from the primary torts, the Court addresses this claim for the sake of completeness.
"With respect to the conspiracy elements, great leeway should be allowed the pleader,
since by the nature of the conspiracy, the details may not be readily known at the time
of pleading."  *Id.* at 355.  Given this leeway, and the more liberal pleading standard, the
Court finds the allegations regarding a civil conspiracy to be sufficient at this stage.

Defendant contends that the Amended Complaint contains "absolutely no alleged facts against Jerry Jankovic that would rise to the particularity requirements set out in F.R.C.P. 9(b)." (Def. Br. 7).  To support his contention, Defendant argues that the Amended Complaint fails specifically to "state what actions and/or statements were made by Defendant Jerry Jankovic," and instead makes "a blanket imputation of actions allegedly performed by some Defendants to all Defendants." (*Id.*).

Again, the Court disagrees with Defendant's characterization of the allegations in the Amended Complaint.  Plaintiffs have alleged that Defendant authored the PIM that accompanied their private offering of shares in Premiere Power; that it contained containing false and fraudulent information designed to induce investment; and that Plaintiffs partially relied on these representations in making their investment.  (Am. Compl. ¶¶ 44, 47, 49, 54). These allegations sufficiently identify the time, place, and speaker of the representations.  *See Ouaknine* v. *MacFarlane,* 897 F.2d 75, 80 (2d Cir. 1990) ("[R]eference to an offering memorandum satisfies 9(b)'s requirement of identifying time, place, speaker, and content of the representation where, as here, defendants are insiders … participating in the offer of securities.")

Moreover, as required by Rule 9(b), Plaintiffs have not only identified the content of the representations, but they have also specified precisely why certain statements in the PIM were fraudulent.  First, they point out that various individuals identified in the PIM as being owners, board members, and

advisors to Premiere Power — including leaders in the power plant industry — have denied such involvement in the company.  (Am. Compl. ¶¶ 53-54).  Second, they allege that the PIM contained a purported "agreement with the Osage Tribe to develop a 110 megawatt gas-powered cogeneration plant," but that the Osage Tribe had never agreed to allow their land to be used for the development of power plants.  (*Id.* at ¶¶ 43, 57).  Third, Plaintiffs point out that the PIM identifies ESA Engineering as a service provider, but that the company had already dissolved in 2007.  (*Id.* at ¶ 43 n.3).  Accordingly, the Court finds that the state-law claims for fraud, fraudulent inducement, breach of fiduciary duty, and unjust enrichment in the Amended Complaint satisfy the particularity requirements of Rule 9(b).

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss for failure to state a claim under Section 10(b) of the Exchange act is DENIED; Defendant's motion to dismiss for failure to properly plead its state-law fraud claims is DENIED; and Defendant's motion to dismiss for lack of personal jurisdiction is DENIED.  The Clerk of Court is directed to terminate Docket Entry 39.  The next conference in this matter is scheduled for August 11, 2015, at 4:30 p.m. in Courtroom 618 of the Thurgood Marshall Courthouse.

SO ORDERED.

Dated:      August 4, 2015
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

*A copy of this Order was mailed by Chambers to:*

Jerry Jankovic
7914 East 106th Street
Tulsa, OK 74133

24